Cite as 2020 Ark. 274

# SUPREME COURT OF ARKANSAS
No. CR-18-972

| | |
|---|---|
| HOWARD WOOD<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered September 17, 2020<br><br>PRO SE APPEAL FROM THE SCOTT COUNTY CIRCUIT COURT<br>[NO. 64CR-13-36]<br><br>HONORABLE JERRY RAMEY, JUDGE<br><br>AFFIRMED. |

**JOSEPHINE LINKER HART, Associate Justice**

Appellant Howard Wood appeals from the circuit court's denial of his pro se petition for a writ of error coram nobis.[1] Because the circuit court did not abuse its discretion in denying relief, we affirm.

---

[1] The record reveals that Wood filed an initial pro se petition for a writ of error coram nobis in December 2017, with attached exhibits in support of his petition. This initial petition was denied by the circuit court in February 2018 for, among other things, the failure by Wood to obtain permission from this court before filing the petition. Wood subsequently attempted to file the coram nobis petition in this court and was informed that, because he had pleaded guilty, the petition must be filed directly in the circuit court. Wood then filed a second pro se petition for coram nobis relief in May 2018, making essentially the same allegations raised in the first petition. Wood did not attach exhibits to his second petition but referenced the exhibits that had been attached to his first petition. The circuit court entered an order in September 2018 that apparently disposed of both the first and second coram nobis petitions filed by Wood. A timely notice of appeal was filed with respect to the circuit court's second order denying relief.

I. *Facts*

Wood pleaded guilty in July 2016 to the sexual abuse of A.S., who was fifteen years old. Wood was sentenced to 360 months' imprisonment in the Arkansas Department of Correction. Wood alleged in the circuit court and reasserts on appeal that he is entitled to the issuance of a writ of error coram nobis because the prosecutor withheld material evidence from the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), that included inconsistent and contradictory statements given by the victim, A.S., and statements from other witnesses that Wood alleges are exculpatory. Wood also contends that investigators seized his computer and other material from his home with his wife's permission and failed to disclose which items were seized. Wood alleges that the evidence seized from his home would have contained material exculpatory evidence.

II. *Standard of Review*

The standard of review of an order entered by the circuit court on a petition for writ of error coram nobis is whether the circuit court abused its discretion in granting or denying the writ. *Osburn v. State*, 2018 Ark. 341, 560 S.W.3d 774. An abuse of discretion occurs when the circuit court acts arbitrarily or groundlessly. *Id.* The circuit court's findings of fact on which it bases its decision to grant or deny the petition for writ of error coram nobis will not be reversed on appeal unless those findings are clearly erroneous or clearly against the preponderance of the evidence. *Id.*

III. *Nature of the Writ*

A writ of error coram nobis is an extraordinarily rare remedy, and proceedings for the writ are attended by a strong presumption that the judgment of conviction is valid. *Jackson v. State*, 2018 Ark. 227, 549 S.W.3d 356. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Id.* The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Id.* It is the petitioner's burden to show that a writ of error coram nobis is warranted. This burden is a heavy one because a writ of error coram nobis is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Rayford v. State*, 2018 Ark. 183, 546 S.W.3d 475.

IV. *Grounds for the Writ*

A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Id.*

A *Brady* violation is a ground for issuance of the writ because it involves the withholding of material evidence by the prosecutor. To establish a *Brady* violation, the petitioner must satisfy three elements: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have

3

ensued. *Buchanan v. State*, 2019 Ark. 19, 565 S.W.3d 469. The mere fact that a petitioner alleges a *Brady* violation is not sufficient to provide a basis for error coram nobis relief. *Id.* In *Strickler v. Greene*, 527 U.S. 263 (1999), the Court revisited *Brady* and declared that evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." 527 U.S. at 280.

V. *Claims for Issuance of the Writ*

A. Statements by A.S. and Wood's Stepson

Wood contends that the prosecutor failed to turn over evidence connected to an additional investigation conducted by the Department of Human Services (DHS) that contained transcribed and summarized statements, as well as recorded statements given by the victim and other witnesses. According to Wood, had he been aware of this additional investigation and of the content of the statements given to DHS, he would not have pleaded guilty because the separate statements provided by A.S. in March 2013 and in May 2013 contained numerous inconsistencies that could have been used to impeach her credibility and, thus, would have provided a defense to the charge of sexual abuse.

In support of his *Brady* claims, Wood attached to his first coram nobis petition the investigative materials he had obtained from DHS that were allegedly withheld by the prosecution. At the same time, Wood attached materials that had been turned over to the defense by the prosecution that included the statements the Arkansas State Police took from A.S. and Zachary Claude, Wood's stepson. A review of the DHS investigative

4

materials shows that DHS had merely incorporated the statements that were taken by State Police investigators and did not perform separate interviews with witnesses. Because of this, the two separate statements given by A.S. to police investigators were contained in the materials that the prosecutor had disclosed to the defense. Therefore, the separate statements given by A.S. were known to the defense when Wood pleaded guilty.

In any event, Wood has failed to demonstrate that he suffered prejudice as a result of A.S.'s inconsistent statements. While the second statement provided by A.S. in May 2013 expands on the facts she provided in her initial statement, she consistently described an ongoing sexual relationship with Wood. Moreover, Wood's sexual abuse of A.S. was corroborated by statements made to investigators by Zachary, and by numerous Facebook messages that were exchanged between A.S. and Wood, after A.S. had been interviewed by investigators. The Facebook message exchanges were monitored by investigators and were turned over to the defense together with the statements of A.S. and Zachary.

Zachary asserted that Wood had confessed to him that he had sexual intercourse with A.S., and he further revealed that he witnessed Wood having sex with A.S. The Facebook messages demonstrated that Wood tried to coax A.S. into denying that they had engaged in sexual intercourse. In the messages, Wood repeatedly told A.S. that he loved her and suggested that the two of them run away to Mexico. Moreover, when A.S. refused to deny the sexual relationship, Wood did not contradict her but continued to proclaim his love for her. In view of the above-cited evidence that was in the possession of the prosecution and known to the defense when Wood pleaded guilty, any inconsistencies or

5

contradictions in the statements provided by A.S. were not likely to change the outcome of the proceedings. As stated, the prosecution had provided to the defense both statements of A.S. Therefore, when Wood pleaded guilty, he would have been aware of any inconsistencies and contradictions contained in those two statements.

## B. Statements by Other Witnesses

Wood also contends that the withheld materials contained exculpatory evidence from other witnesses who were living in Wood's home during the relevant time frame. Wood was not provided with the summaries of statements given by witnesses other than A.S. and Zachary, and Wood contends that these additional statements were exculpatory. Wood is mistaken. While these witnesses did not state that they had observed Wood and A.S. engaging in sexual intercourse, each witness provided further corroboration as to the unusually close and inappropriate relationship between Wood and A.S. These witnesses described that Wood frequently spent money on A.S.; built her a special bed; provided her with a Mustang and allowed her to drive it without a license; expressed his love for A.S.; became furious when A.S. began dating a boy her own age; bought A.S. diamond earrings; insisted on including A.S. in all family activities; and spent late nights with A.S. while Wood's wife worked a night shift. Wood did not sufficiently establish that there was exculpatory information concealed from the defense at the time he pleaded guilty. *Smith v. State*, 2017 Ark. 236, 523 S.W.3d 354.

## C. CDs

Wood also contends that CDs containing recorded interviews with A.S. and other witnesses were withheld from the defense. The dates on the allegedly withheld CDs that contain the recorded statements correspond with the dates of the transcribed statements from A.S. and Zachary. The same is true with respect to the dates provided on the typed summaries of statements provided by the additional witnesses. In other words, the transcribed content of the recorded interviews with A.S. and Zachary were provided to Wood before his plea, and the typed summaries of the interviews with the additional witnesses demonstrate that the additional witnesses did not exculpate Wood. Wood alleges that the CDs contain statements from these witnesses that were intentionally omitted from the summarized statements but fails to explain which specific statements were omitted that contained exculpatory evidence. Wood has provided no evidence that the recorded interviews would have disclosed any additional material and exculpatory evidence. So too, Wood has presented no evidence showing that his computer and other material seized by investigators contained exculpatory evidence, and Wood has failed to describe the existence of such evidence.

D. Messages Between Wood and A.S.

Wood also contends that statements made by A.S. to investigators are contradicted by a series of text messages that were exchanged between Wood and A.S.[2] Again, the

_____

[2]The inconsistency alleged by Wood concerns allegations that a previous boyfriend of A.S.'s mother named Mike had inappropriately touched A.S. A.S. told investigators that Mike had never hurt her while the text messages exchanged between Wood and A.S. discussed Mike's alleged misconduct.

7

prosecution provided to the defense the two statements given by A.S. to investigators before Wood pled guilty, and at the same time, he should have been aware of messages he exchanged with A.S. that contradicted statements she made to investigators. Wood has failed to show that exculpatory evidence was withheld and unknown to him at the time of the guilty plea. *Smith*, 2017 Ark. 236, 523 S.W.3d 354.

Wood failed to demonstrate that there is a reasonable probability that the judgment of conviction would not have been rendered or would have been prevented had the allegedly withheld information been disclosed. *Scott v. State*, 2017 Ark. 199, 520 S.W.3d 262. As stated above, the function of the writ of error coram nobis is to secure relief from a judgment rendered while there existed a fundamental error that would have prevented its rendition had it been known at the time of trial. *Jackson v. State*, 2017 Ark. 195, 520 S.W.3d 242. Wood did not meet his burden of proof or state facts sufficient to establish that the State concealed material evidence or that said evidence was exculpatory in nature. *Williams v. State*, 2017 Ark. 313, 530 S.W.3d 844.

Finally, Wood contends that the circuit court erred when it failed to conduct an evidentiary hearing on his petition, which alleges a *Brady* violation. But as alleged, the undisclosed evidence Wood describes would only have supplied him with impeachment material. "[T]he Constitution does not require [the prosecution] to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002). The circuit court is not required to hold a

hearing on a coram nobis petition if the petition clearly has no merit. *Pugh v. State*, 2019 Ark. 319, 587 S.W.3d 198.

Affirmed.

*Howard Wood*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.